**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DONALD JAMES THOMAS, II,** | : | **CIVIL NO. 1:06-CV-1839** |
| **Plaintiff,** | : | |
| | : | **(Chief Judge Kane)** |
| **v.** | : | |
| | : | |
| **SCI-DALLAS, et al.,** | : | |
| **Defendants** | : | |

**MEMORANDUM**

Before the Court is a motion to dismiss (Doc. No. 13) Plaintiff Donald James Thomas's

civil rights complaint (Doc. No. 1) filed pursuant to Federal Rule of Civil Procedure 12(b)(6) on

behalf of Defendants State Correctional Institution at Dallas ("SCI-Dallas"), Sergeant John

Konycki ("Konycki"), Correctional Officer Christopher Angelovic ("Angelovic") and

Correctional Officer Ralph Liauvara ("Liauvara").  For the reasons discussed below, the motion

will be granted in part and denied in part.

**I.     BACKGROUND[1]**

The allegations in the complaint regarding Defendant Konycki, a sergeant in the

restricted housing unit ("RHU") of SCI-Dallas, are fairly sparse.  Plaintiff asserts that Sergeant

Konycki is Plaintiff's girlfriend's former brother-in-law, and that Defendant Konycki worked

with the other individual co-defendants assigned to the RHU.  Plaintiff claims that Defendant

Konycki was questioned about Plaintiff's possession of contraband and was embarrassed by the

incident.

---

[1] The factual background information is drawn from Plaintiff's complaint.  (Doc. No. 1.)
The Court notes that Plaintiff's complaint is somewhat disjointed and that he does not always
specify the actor allegedly engaging in certain identified misconduct.  The Court has read
Plaintiff's complaint liberally, as he is proceeding pro se, and the Court has drawn all reasonable
inferences in the Plaintiff's favor, consistent with the standard governing the adjudication of a
motion to dismiss.

Plaintiff also claims that on August 9, 2006, Defendant Angelovic, a correctional officer at SCI-Dallas, filed a misconduct report alleging that Plaintiff possessed contraband in violation of prison policies.  Allegedly, Defendant Angelovic claimed to have written Plaintiff up as "a favor for his buddy."[2]  Plaintiff also alleges that during a visit with his girlfriend, Plaintiff complained to her about the allegedly falsified misconduct report and pointed out Defendant Angelovic to her.  After Plaintiff left the visiting area, Defendant Angelovic allegedly grabbed Plaintiff's neck, shook him, and threatened to beat him for "running [his] mouth."  Thereafter, Defendant Angelovic purportedly smashed Plaintiff's head off the wall, shoved him, shook him, and told Plaintiff he "was done for."

Plaintiff apparently filed a grievance pertaining either to the misconduct report or to the alleged assault.  When the grievance was denied, Defendant Liauvara, another correctional officer in the RHU, refused to feed Plaintiff and said, "Let the games begin."[3]  Plaintiff asserts that an unidentified "they" also "came to [his] door and said [he] better stop filing paperwork on them, [that] they can play games to[o]. . . [that]  they were going to get [him]."  Plaintiff also claims that "they" refuse to provide him his paperwork and will not take his mail, and he

---

[2]  The identity of Defendant Angelovic's "buddy" is not identified in the complaint, though the Court infers that the "buddy" is Konycki.  The Court does not infer, however, that Defendant Konycki requested, directed, or was otherwise actively involved in Defendant Angelovic's commission of this "favor," particularly in the absence of any allegations otherwise.

[3]  It is unclear from the complaint the extent of Defendant Liauvara's alleged withholding of food – whether this was an isolated denial of one meal or whether it was an ongoing practice. (See Doc. No. 1, at 2-3) (For example, the assertion that Defendant Liavara refused to feed him to demonstrate the correctional officers' ability to "play games" seems to suggest that this was an isolated incident; however, the Plaintiff's allegation that his "me[a]l never makes it to [him]" could encompass multiple incidents or an ongoing pattern.)

believes that "they" are throwing away either the mail, the paperwork, or both.[4]

Lastly, Plaintiff claims that SCI-Dallas did not adequately investigate the abovementioned incidents.  For these alleged violations of his civil rights, Plaintiff seeks to have the allegedly false misconduct report expunged, and requests compensatory damage, reimbursement of the filing fee, and a transfer to a different state correctional institution.

In their motion to dismiss, Defendants advance several arguments.  First, they contend that SCI-Dallas is not a proper party to this action and immune from suit under the Eleventh Amendment.  Defendants argue that the individual defendants in their official capacities are similarly immune from suit.  Finaly, Defendants claim that Plaintiff has inadequately alleged personal involvement by Defendants Konycki and Liauvara in any violation of Plaintiff's constitutional rights.[5]

## II.      STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint, Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993), and is properly granted when, taking all factual allegations and inferences as true, the moving party is entitled to judgment as a matter of law.  Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990).  Although the court is

---

[4]  To the extent that Plaintiff is seeking to assert claims against the individual defendants based upon these alleged acts of misconduct, he is advised to seek leave to amend his complaint to make these allegations with greater specificity.  For example, Plaintiff would be well advised to identify by name any individuals allegedly preventing him from submitting prison paperwork or utilizing the mail and to more fully explain each individual's conduct.  As drafted, the Court does not read Plaintiff's complaint to assert claims relating to the processing of his paperwork or his access to the mail or courts/prison grievance system.

[5]  Defendants advance no arguments pertaining to any claims asserted by Plaintiff against Defendant Angelovic in his individual capacity.

generally limited in its review to the face of the complaint, it "may also consider matters of

public record, orders, exhibits attached to the complaint and items appearing in the record of the

case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d. Cir. 1997);

see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Although the moving party bears the burden of showing that no claim has been stated,

Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2007), the plaintiff has an obligation to

allege facts sufficient to "raise a right to relief above the speculative level, on the assumption

that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atlantic Corp. v.

Twombly, 127 S. Ct. 1955, 1964 (2007) (internal citations omitted); see also Kost, 1 F.3d at 183

(A plaintiff must "set forth sufficient information to outline the elements of his claim or to

permit inferences to be drawn that those elements exist.") (citation omitted).  Furthermore, "once

a claim has been stated adequately, it may be supported by showing any set of facts consistent

with the allegations in the complaint." Twombly, 127 S. Ct. at 1960.  When evaluating a motion

to dismiss, a court need not "credit a complaint's 'bald assertions' or 'legal conclusions.'"

Evancho v. Fisher, 423 F.3d 347, 354-55 (3d Cir. 2005).  Finally, when a plaintiff fails to plead

"enough facts to state a claim to relief that is plausible on its face," Twombly, 127 S. Ct. at 1960,

the complaint should be dismissed.

## III.   DISCUSSION

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which offers private citizens a

cause of action for violations of federal law by state officials.  The statute provides, in pertinent

part, as follows:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of

> Columbia, subjects, or causes to be subjected, any citizen of the
> United States or other person within the jurisdiction thereof to the
> deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action
> at law, suit in equity, or other proper proceeding for redress. . . .

See 42 U.S.C. § 1983; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002).  To

establish a civil rights claim, the plaintiff must show a "deprivation" of a constitutional or

statutory right by a person "acting under color of state law."  Gonzaga Univ., 536 U.S. at 284-85

(quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).

### A.      Eleventh Amendment

Defendants argue that certain portions of the complaint are barred by the Eleventh

Amendment, which provides that "[t]he Judicial power of the United States shall not be

construed to extend to any suit in law or equity, commenced or prosecuted against one of the

United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S.

Const. amend. XI.  Thus, under the Eleventh Amendment, absent express consent by the state in

question or a clear, unequivocal, and appropriate waiver by Congress, states are immune from

suit in federal court.  See Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54 (1996).

### 1.      Defendant SCI-Dallas

The Eleventh Amendment, which applies to claims asserted in federal court under 42

U.S.C. § 1983, Quern v. Jordan, 440 U.S. 332 (1979), prohibits suits brought in federal court

against a state or where the state or its agency is the real party in interest, and in which the relief

sought has an impact directly on the state itself.  Pennhurst State Schs. and Hosp. v. Halderman,

465 U.S. 89 (1984).  A state may waive its sovereign immunity by consenting to suit.  Coll. Sav.

Bank v. Fla. Prepaid Postsecondary, 527 U.S. 666, 670 (1999) (citing Clark v. Barnard, 108 U.S.

436 (1883)).  However, Pennsylvania has explicitly withheld its consent to suit in federal court.

See 42 Pa. Cons. Stat. § 8521(b).  The Pennsylvania Department of Corrections, which

encompasses SCI-Dallas, is a state agency that has no existence apart from the state.

Consequently, the request for monetary damages is barred by the state's sovereign immunity

under the Eleventh Amendment of the United States Constitution.[6]  See Durham v. Dep't. of

Corrections, 173 F. App'x 154, 156 (3d Cir. 2006) ("Here, the District Court properly

determined that the Pennsylvania Department of Corrections is immune from suit pursuant to the

Eleventh Amendment.").

### 2.      *Individual Defendants*

Defendants also argue that the Eleventh Amendment bars Plaintiff's claims for monetary

damages against them in their official capacities.  The Court agrees.  State officials are entitled to

Eleventh Amendment immunity for claims seeking money damages against them in their official

capacities.  See Hafer v. Melo, 502 U.S. 21 (1991); Will v. Mich. Dep't of State Police, 491 U.S.

58, 70-71 (1989); Corey v. White, 457 U.S. 85 (1982).  Moreover, individuals acting in their

official capacities are not "persons" under § 1983.  Will, 491 U.S. at 71.  Since the Pennsylvania

Department of Corrections is a state agency, all of its employees, acting in their official

capacities, are protected by the Eleventh Amendment.  Anderson v. Pennsylvania, 196 F. App'x

115, 117 (3d Cir. 2006) ("[C]laims made against state officials in their official capacities are

---

[6] Defendants also argue that SCI-Dallas should be dismissed because it is not a person.
As noted above, § 1983 creates a cause of action against every "person" who under color of state
law deprives an individual of a right secured by the Constitution or federal statute.  SCI-Dallas is
an arm of a state agency, and it is well-settled that neither a state nor an agency of the state is a
"person" as that term is used in 42 U.S.C. § 1983 and, hence, not subject to suit.  See Hafer v.
Melo, 502 U.S. 21, 25-27 (1991).  Will v. Mich. Dep't of State Police, 491 U.S. 58 (1989); Mt.
Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274 (1977).

treated as claims made against the state itself.").  Therefore, to the extent Plaintiff seeks

monetary damages from Defendants, employees of the Department of Corrections, in their

official capacities, the motion will be granted.

### B.  Personal Involvement

"A defendant in a civil rights action must have personal involvement in the alleged

wrongs. . . .  Personal involvement may be shown through allegations of personal direction or

actual knowledge and acquiescence."  Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir.

1988).  Each defendant must have been personally involved in the events or occurrences which

underlie a claim.  See Atkinson v. Taylor, 316 F.3d 257 (3d Cir. 2003); Rizzo v. Goode, 423

U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976).

### 1.  Defendant Konycki

Defendants seek dismissal of any claims against Defendant Konycki on the ground that

Plaintiff fails to assert that Konycki was personally involved in the alleged wrongful conduct.

The Court agrees.  Plaintiff's complaint contains general allegations pertaining to Defendant

Konycki's background (he is a sergeant in the RHU and the brother of Plaintiff's girlfriend's ex-

husband) and pertaining to an incident where Defendant Konycki was allegedly embarrassed on

account of the Plaintiff (when Defendant Konycki was questioned about Plaintiff's alleged

possession of contraband).  These allegations to not state a constitutional claim against

Defendant Konycki.  In fact, in his brief in opposition to the motion to dismiss Plaintiff concedes

that Konycki "personal[l]y never did anything himself."  (Doc. No. 21, at 2.)  Accordingly, the

Court will dismiss any claims purportedly advanced against Defendant Konycki.[7]

### 2.     *Defendant Liauvara*

Likewise, Defendants claim that Plaintiff's complaint fails to contain the requisite allegation that Defendant Liauvara was personally involved in any deprivation of a "right, privilege or immunity secured by the constitution or by the laws of the United States." Defendants "submit[] that [Plaintiff's] naked allegation that Liauvara refused to feed him, without more, has failed to meet this requirement of showing conduct on the part of Liauvara which rises to the level of a constitutional violation." (Id. at 7.)  The Court disagrees with Defendants' characterization of Plaintiff's claim.  Reading the complaint in the light most favorable to Plaintiff, the Court finds that Plaintiff has stated a claim for First Amendment retaliation against Defendant Liauvara.

To state a First Amendment retaliation claim, a plaintiff must show that the conduct which led to the alleged retaliation was constitutionally protected.  Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).  Plaintiff's filing a prisoner grievance clearly falls within the ambit of the First Amendment's protections.  Robinson v. Taylor, No. 05-4492, 2006 WL 3203900 (3d Cir. Nov. 7, 2006) (holding that the prisoner-plaintiff's "filing of a grievance to complain about [prison employee's] behavior is constitutionally protected activity"); Mitchell v. Horne, 318 F.3d 523, 530 (3d Cir. 2003) (holding that the prisoner's "allegation that he was falsely charged with misconduct in retaliation for filing complaints against [a prison officer] implicates conduct protected by the First Amendment").

---

[7] Plaintiff may seek leave to amend his complaint should he be able to include allegations of personal involvement by Defendant Konycki in any of the purported constitutional violations about which Plaintiff complaints.

Next, a prisoner-plaintiff "must show that he suffered some adverse action at the hands of prison officials . . . sufficient to deter a person of ordinary firmness from exercising his constitutional rights." <u>Rauser</u>, 241 F.3d at 333 (internal quotation marks, citations, and brackets omitted).  Plaintiff claims that "when [his] grievance came back denied[,] Officer Liauvara refused to feed me and said let the games begin."[8]  (Doc. No. 1, at 3.)  Neither Plaintiff nor Defendants advanced argument whether, and under what circumstances, an allegation of retaliatory denial of food is sufficient to state a claim.  <u>See</u> <u>Rivera v. Chesney</u>, No. 97-7547, 1998 WL 639255, at *4-5 (E.D. Pa. Sept. 17, 1998) (concluding that the plaintiffs adequately alleged a First Amendment retaliation claim against a defendant who refused to permit the plaintiff to leave his cell for the evening meal and stated "Now, go file a grievance on that!"); <u>see also</u> <u>Graham v. NH State Prison</u>, No. 06-453, 2007 WL 610735, at *5 (D.N.H. Feb. 23, 2007) ("While his claim is lacking in details, I find that by alleging that defendants punished him for exercising his First Amendment Rights by withholding food, Graham has stated the minimum facts necessary to establish a retaliation claim.").  <u>But see</u> <u>Prisoner's Legal Ass'n v. Roberson</u>, No. 91-4460, 1997 WL 998592, at *5 (D.N.J. Nov. 19, 1997) (finding that the plaintiff's allegation that he was denied breakfast for retaliatory reasons "does not itself rise to the level of a retaliatory act," particularly since the incident was temporally remote from the plaintiff's protected activity.")  Considering Plaintiff's allegations in the light most favorable to him, and given Defendants' failure to address this issue, the Court concludes that Plaintiff should be afforded the opportunity to develop facts that would demonstrate that the alleged conduct would

---

[8]  As noted above, the extent of Defendant Laiuvara's alleged food withholding is unclear. <u>See</u> <u>supra</u> note 3.

deter a reasonable inmate from pursuing grievances.  See Young v. Medden, No. 03-5432, 2006

WL 456274, at *23-24 (E.D. Pa. Feb. 23, 2006) (Although it had "some reservations about

whether th[e] alleged conduct constitutes adverse action," namely deprivation of certain property

and denial of access to the commissary, the court reasoned that "it is plausible that the plaintiff

will be able to demonstrate that the conduct by [defendants] would have deterred an ordinary

person from filing grievances."); see also Davis v. Goord, 320 F.3d 346, 354 (2d Cir. 2003)

(reading prisoner-plaintiff's complaint charitably and construing the alleged actions as being

sufficiently adverse).

Finally, to state a First Amendment retaliation claim, the plaintiff must allege a causal

link between the protected activity and the retaliatory acts, which Plaintiff has somewhat

inarticulately alleged.  Thus, the Court finds that Defendants have not sustained their burden of

demonstrating that Plaintiff has failed to state a claim against Defendant Liauvara.  Accordingly,

their motion to dismiss will be denied in this respect.

## IV.    CONCLUSION

In conclusion, Plaintiff has failed to state a claim against Defendant SCI-Dallas,

Defendant Konycki, or any of the individually named defendants in their official capacities.

However, reading the complaint in the light most favorable to Plaintiff, the Court finds that

Plaintiff's allegations of First Amendment retaliation against Defendant Liauvara are sufficient

to withstand Defendants' motion to dismiss.  Finally, the Court notes that no arguments were

advanced by Defendants relating to assault allegedly committed by Defendant Angelovic.

An appropriate order granting in part and denying in part Defendants' motion to dismiss

(Doc. No. 13) follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DONALD JAMES THOMAS, II,** | : | **CIVIL NO. 1:06-CV-1839** |
| **Plaintiff,** | : | |
| | : | **(Chief Judge Kane)** |
| **v.** | : | |
| | : | |
| **SCI-DALLAS, <u>et</u> <u>al</u>.,** | : | |
| **Defendants** | : | |

**ORDER**

   **AND NOW**, this 10ᵗʰ day of August, 2007, upon due consideration of the complaint,

Defendants' motion to dismiss, and the documents in support thereof and opposition thereto, and

for the reasons set forth in the accompanying memorandum, **IT IS HEREBY ORDERED**

**THAT** Defendants' motion to dismiss (Doc. No. 13) is **GRANTED IN PART** as follows:

   a.   Plaintiff's claims against Defendants SCI-Dallas and Konycki are **DISMISSED**

        in their entirety.

   b.   Plaintiff's claims against the individual Defendants in their official capacities are

        **DISMISSED**.

In all other respects, Defendants' motion to dismiss is **DENIED**.

   **IT IS FURTHER ORDERED THAT** Defendants Angelovic and Liauvara are

**DIRECTED** to file an answer or appropriate pretrial motion within twenty days of the date of

this Order.

                                        s/ Yvette Kane
                                        Yvette Kane, Chief Judge
                                        United States District Judge
                                        Middle District of Pennsylvania